Chief Justice Marshall
delivered the opinion of the Court.
In October 1842 William Farrow obtained a decree against the heirs of William Clark, which was made final in April 1843, for the specific performance of a contract for the sale of a lot in Paducah by Clark to Farrow, on the payment of a designated balance of the purchase money then unpaid. In July and August 1843, the balance of the money having been paid to the commissioner appointed to make the conveyance, was by him paid to and received by the agent or attorney of Clark’s heirs, who were non-residents of this State; and on the 10th day of August, 1843, the commissioner made the conveyance, which was reported to the Court in October following, and then approved. In January 1843 Farrow conveyed the' lot to Joseph Wright, the father of his wife, for an alleged debt of $2000, recited as being the balance of a debt of $6000, *447 formerly due between the same parties, and for which Farrow had mortgaged the lot to Wright in 1837, but the mortgage had been released in July 1839, ten days after the filing of Farrow’s bill' against Clark’s heirs, and more than three years before the first decree. On the 2d day of Agust, 1843, Wright, by his attorney, acting under a power containing specific directions, and dated in February 1843, conveyed the lot to Mrs. Eliza Farrow, the daughter of Wright and wife of the complainant Farrow. This conveyance was made to the separate use of Mrs. Farrow, &c., and in consideration of natural love and affection. This deed acknowledged the subjection of the lot for the security of two small sums due from Farrow, to which it had been made subject by his deed to Wright.
In January 1845 a writ of error was pi’osecuted by Clark’s heirs for the reversal of the decree for specific execution, and by, the opinion and mandate of this Court, which was entered of record in the Circuit Court in September 1845, that decree was reversed, and the opinion expressed that as Clark’s heirs asked for a rescisión on the same grounds on which a specific execution was refused, the contract should be-rescinded on equitable terms, &c., in regard to which it was said the value of improvements, &c., should be-ascertained. After the cause was re-docketed in the Circuit Court, Eliza Farrow filed her petition praying that she and her father, Joseph- Wright, might be made parties to her husband’s bill, which, upon the order of the Court, was accordingly done; and she filed her answer setting forth, as she had done in her petition, the facts nearly as-they have been already stated, and making it a cross-bill against Clark’s heirs, prayed in effect that her title might be confirmed on the ground that her father was a purchaser for a valuable consideration after the decree, and without notice of the equity of Clark’s heirs, to have a rescisión of the original contract, or of their intention to prosecute a writ of error to the decree, and which, as she contends, they were equitably estopped from prosecuting by having received through *448 their agent a part of the purchase money under the decree.
Clark’s heirs, who had answered the original bill, opposed the filing and the prayer of the petition, and afterwards moved to reject it and the answer and cross-bill, to which, however, they never appeared, but rested upon the traverse put in for them as non-residents. The Court, without further proof than is furnished by the exhibits above referred to, decreed that Clark’s heirs be perpetually enjoined from asserting any claim to the lot in question, and that Eliza Farrow be quieted in the enjoyment of her title and possession, and that Clark’s representatives have the benefit of their remedy at law upon the contract against William Farrow, &C.
The mandate of this Court reversed the former decree, and remanded the cause for further proceedings, and decree in conformity with the opinion then rendered ; a part of which was that there was ground for a rescisión as prayed for by the defendants, and that the contract should be rescinded. The further proceedings were directed, not for ascertaining the right to a rescisión which was decided., but for ascertaining the equitable terms which were to accompany it. From the statement of facts already made, it is manifest that all proper parties were before the Court when the reversed‘decree was rendered; and all parties to the decree were before this Court upon the wr.it of error, and were bound by the mandate by which the decree for specific execution of the contract was actually annulled and a decree fori a rescisión directed. It is certain that if the complainant Farrow had retained his interest, as the only party claiming the benefit of the contract, the decision and mandate of this Court must have been conclusive upon his rights, unless he had set up some new intervening equity'against Clark’s heirs, or some new matter affecting the original case, which was not and could not have been presented in the prior litigation. By the reversal of the decree, the commissioner’s deed made under it would have been, ipso facto, an *449 nulled, and would have become wholly inoperative, and in the absence of some new ground of litigation the contract must have been rescinded.
A purchaser from a successful party in chancery is not a necessaryparly lo a bill of •review: (Debell vs Foxworthy’s heirs, 9 B. Monroe, 228,) and is bound by the decision upon such bill, or upon -writ of .errpr.
Could any person, deriving an interest from Farrow, after the rendition of the reversed decree, and before the emanation of the writ of error, occupy a better condition than his? In the case of Debell vs Foxworthy’s heirs, (9 B. Mon. 228,) this Court decided that the purchaser from the successful party, after a final decree, was not a necessary party to a bill of review after-wards brought by the unsuccessful party, and was bound by the decree of reversal upon the bill of review, though not a party to that bill. And the opinion (.page 233) contains the following language, which seems to furnish a direct answer in the negative to the^question just stated. The Court there said: “So. far as a voluntary purchaser is concerned, the litigation is regarded:as still continuing, notwithstanding the final decree in the Court of original jurisdiction, where a writ of error is subsequently prosecuted, or where a bill of review is • filed to correct errors apparent in the record; and he is concluded- by the decree which may be finally rendered, founded merely on the same matter originally in issue between the parties.” A reference to the opinion will show, that this position is stated in relation to a person not a party to the original suit, who becomes interested in the subject after the decree, and that.it -expresses the ground on which the case was decided. We refer to that opinion for the reasons and authority on which the position rests. And we barely remark in • addition, that a title passed by commissioner’s deed under a decree for specific performance and other similar ■cases, stands upon a different groundirom that of a title derived under a decree of sale, and an actual sale; be- ■ cause, in the former case, the conveyance of title rests ■wholly on the decree, and is the same as if it existed in •the decree alone., there being no meritorious act done under the authority of the decree which might give additional efficacy to the conveyance.
But in other cases, as of a sale under a decree, the *450 purchase is itself a meritorious act, authorized by the decree aud creating an equity; and it is a matter of interest to all parties, and to the public, that such sales, if fairly made, should be sustained, and they are sustained, though such decree be afterwards reversed. They are sustained, too, though the purchaser be the successful party to the suit, because he does not get the land by the direct operation of the decree itself, but by proceedings which it authorizes; and for this reason he is not compelled, upon a reversal, to restore the land, but to restore the price or money which it brought, and which alone he gets by the direct operation of the decree. On these, and perhaps other grounds, may be placed the distinction which has been uniformly held between the effect of reversing decrees for sale, or under which sales have properly taken place, and decrees for conveyance of title where that is the object of the suit, and the very thing decreed.
A sale made under a decree, which is sanctioned by the Court, is generally effectual to pass title to the purchaser, tho’ the purchase be by the successful party, notwithstanding the decree be after-wards reversed: not so when the purchase is from the suocesstul party.
That tribunals and remedies have been provided for the revision and reversal of decrees, shows that it is not a matter, of public interest to sustain erroneous decrees, but the contrary. And the law effectuates, as far as eán be justly done, the just principle that what a man has lost by an erroneous decree, shall be restored to him on its reversal. But other principles and an enlarged view of all interests involved, have limited the operation of this principle to the direct loss of one and' the direct gain of the other, by the direct operation of the decree. If this loss has been in money, the money is restored; if in land, or the title to it, the land or title is restored or regained. It is by reason of the permanency and identity of this latter subject, that third persons may become involved in the consequences of this right to restitution, in case of the reversal of decrees for title, in a manner which could scarcely occur with respect to decrees for money. But it must be known to all, that decrees are subject to reversal, and, therefore, that a title resting exclusively on a decree, and identified with it, may be divested by its reversal, and, therefore, is not indefeasible until there has been an affirm *451 anee, or until the rembdv for reversal is barred. The Legislature by limiting the time within which the remedy for reversal must be sought, has limited the period of this uncertainty in titles; and however inconvenient such an uncertainty may be, a writ of error prosecuted at any time within the prescribed period, is entitled to its full effect. If a title conveyed by a decree is purchased in actual ignorance that there is a remedy for reversal open to the unsuccessful party, and the decree is afterwards reversed, the principle decided in Debell vs Foxworthy and other cases, by which the reversal of the decree would defeat the -intermediate purchase, wouldyloubtless in many cases produce great hardship. But a writ of error upon a decree for title would be of little avail, if the title could be placed out of the reach of the party or the Court by a private sale immediately after the decree. And it can only have its full effect by regarding the intermediate purchase!’, as being according to the principle of the case of Debell vs Foxworthy, either a privy to the decree, or a pendente lite purchaser.
But in the case now before us there is less difficulty in holding Mrs. Farrow subject to the effect of the reversal and mandate of this Court, because she is herself a volunteer and not a purchaser for value; and because her father, who received the conveyance from Farrow, is not only not proved otherwise than by the recitals of the deed and his own statements to have been a creditor of Farrow, but appears in fact to have received the conveyance From, him before the final decree was rendered, while the suit was actually pending in Court, arid before the receipt of the balance of the purchase money by the agent of Clark’s heirs, which is relied on as an estoppel.. And even Mrs. Farrow received the conveyance to her before the commissioner’s deed was made, and before the entire balance of the purchase was paid. With regard to the receipt of the purchase money by the agent, under the provisions of the decree, we do not consider it as in any manner affecting the right of his principals to prosecute a writ *452 of error with full effect, or as estopping them from claiming the full benefit of the result. And as Mrs. Farrow has shown no equity against them which was not involved in the original suit, we ai’e of opinion that her interest is bound by the decree and mandate of this Court formerly rendered, and that the same should have been and must now be carried into full effect.
J. ¿f W. L. Harlan for appellants; Husbands for appellees.
Wherefore, the decree is reversed, and the cause remanded with directions to dismiss Mrs. Farrow’s cross-bill with costs, and to decree a rescisión of the contract between Farrow and Clark’s heirs set up in the- original bill; and the Circuit Court is also directed to ascertain the value of improvements, &c., as directed in the former opinion and mandate, and determine the claims incident to the recision on equitable principles.