[Sac. No. 1031.   Department Two.—April 29, 1904.]

ALFONSO DI NOLA, Respondent, v. D. E. ALLISON et al., Defendants; JAMES BARRON, Appellant.

FORECLOSURE OF MORTGAGE—SALE PENDING APPEAL—PURCHASE BY MORT-
    GAGEE—CONVEYANCE TO THIRD PARTY—NOTICE OF PROCEEDINGS—
    EFFECT OF REVERSAL.—Where an appeal was taken from a judgment
    foreclosing a mortgage without a stay of execution, and the mort-
    gagee made a sale pending the appeal at which he became
    the purchaser, and afterwards conveyed the title pending the
    appeal to the respondent, the effect of the reversal of the judgment
    is to nullify the title in the hands of the respondent, who was bound

to take notice of all the proceedings in the cause and of the defeasible title of his grantor.

ID.—CONSTRUCTION OF CODE.—Section 957 of the Code of Civil Procedure is not restrictive of the right of the appellant, upon the reversal of the judgment, to the restitution of property. It is a remedial statute, and is to be liberally construed; the rights of a defendant whose property has been taken under a judgment which is subsequently reversed do not depend upon the provision of that section.

ID.—SUSPENSION OF JUDGMENT AS EVIDENCE.—The effect of the appeal is to suspend the effect of the judgment as evidence until its final determination, even though the execution thereof is not stayed.

ID.—ACTION TO QUIET TITLE—BURDEN OF PROOF.—Where the appellant brought an action to quiet his title against the respondent, it was incumbent upon the appellant to prove a superior title to that of the respondent.

ID.—ESTOPPEL OF APPELLANT—PLEADING—FINDING—QUESTION OF FACT. —Where there was no plea of an estoppel of the appellant to question the validity of the sale, and no finding was made upon that question, it cannot be determined upon this appeal. Such estoppel is a question of fact, upon which this court cannot make any finding upon the evidence.

ID.—SPECIFICATION OF PARTICULARS.—Where the statement shows that substantially all the evidence given upon the trial was embodied therein, an objection to the sufficiency of the particulars in which the evidence was sufficient to justify the decision will not be sustained.

APPEAL from a judgment of the Superior Court of Shasta County. Edward Sweeny, Judge.

The facts are stated in the opinion.

Naphtaly, Freidenrich & Ackerman, Thomas B. Dozier, and H. M. Barstow, for Appellant.

The weight of opinion is, that a third person purchasing, not from the sale under execution, but from the plaintiff, who took title at the sale, is not protected upon reversal. (Freeman on Executions, 3d ed., sec. 347; *Singly* v. *Warren*, 18 Wash. 434;[1] Dembitz on Land Titles, p. 1229; *Phillips* v. *Benson*, 82 Ala. 500; *Bryant* v. *Fairfield*, 51 Me. 149; *Adams* v. *Odom*, 74 Tex. 206;[2] *Griswold* v. *Ward*, 128 Ind. 389; *Welch* v. *Staples*, 88 Tenn. 49;[3] *Reynolds* v. *Harris*, 14 Cal. 668.[4])

[1] 63 Am. St. Rep. 896.     [3] 17 Am. St. Rep. 869.
[2] 15 Am. St. Rep. 827.     [4] 76 Am. Dec. 459.

Charles W. Slack, and Joseph E. Barry, for Respondent.

The respondent is entitled to retain the property, notwithstanding the reversal. (*McAusland* v. *Pundt,* 1 Neb. 211, 248;[1] *McJilton* v. *Love,* 13 Ill. 486, 494;[2] *Guiteau* v. *Wisely,* 47 Ill. 433; *Wadhams* v. *Gay,* 73 Ill. 415, 422; *Homer* v. *Zimmerman,* 45 Ill. 14; *Taylor* v. *Boyd,* 3 Ohio, 337;[3] *McCormick* v. *McClure,* 6 Blackf. 466;[4] *McBride* v. *Longworth,* 14 Ohio St. 349, 351;[5] *Little* v. *Bunce,* 7 N. H. 485;[6] *Bickerstaff* v. *Dellinger,* 1 Murph. (5 N. C.) 272; *Parker* v. *Anderson,* 5 T. B. Mon. 445.) There was but one issue, that of ownership, and the question of estoppel was a mere probative fact which may be considered in this appeal in support of the judgment, and must be presumed to have been passed upon adversely to the appellant. (Hayne's New Trial and Appeal, sec. 242; *Krasky* v. *Wollpert,* 134 Cal. 338; *Adams* v. *Crawford,* 116 Cal. 495, 499.)

HARRISON, C.—Action to quiet title.

Plaintiff's title is derived as follows: In 1892 the defendants D. E. Allison, B. R. Sackett, and James Barron were the owners of the land described in the complaint, and executed a mortgage thereon to Charles and Benjamin Golinsky. In 1893 the Golinskys brought an action for the foreclosure of this mortgage, in which they obtained judgment January 5, 1895, directing a sale of the lands in satisfaction of the mortgage debt. Under this judgment the land was sold August 24, 1895, to the plaintiffs in the action, and on March 3, 1896, they received a deed therefor from the officer who made the sale, and on March 24, 1896, they conveyed the land to the plaintiff herein. September 18, 1895, the defendants in the action appealed from the judgment, without giving any bond staying its execution, and on October 7, 1896, the judgment was reversed by this court. (*Golinsky* v. *Allison,* 114 Cal. 458.) The plaintiff brought this action March 19, 1897. Judgment was rendered in his favor, from which and from an order denying a new trial the present appeal has been taken.

---

[1] 93 Am. Dec. 358.

[2] 54 Am. Dec. 449.

[3] 17 Am. Dec. 603.

[4] 39 Am. Dec. 441.

[5] 84 Am. Dec. 383.

[6] 28 Am. Dec. 363, and note.

The question presented by the appeal is whether the title taken by the plaintiff under the conveyance from the Golinskys was defeated by a reversal of the judgment under which their title was derived. It is contended by the appellant that at the time of the sale under the judgment the Golinskys took only a defeasible title to the land purchased by them, and that the effect of the reversal of the judgment was to set aside and vacate the sale; and that as they could not transfer to the plaintiff any greater interest than they themselves had, the title taken by him under the deed from them was also defeated. The respondent, on the other hand, contends that where the plaintiff purchases the defendant's property at a sale had under his own judgment, and, while the judgment is unreversed conveys it to a third person, the title of his grantee will not be affected by a subsequent reversal of the judgment; and in support of this proposition he relies upon section 957 of the Code of Civil Procedure, and has also cited several cases from other jurisdictions.

The rule is unquestioned that if a stranger to the action purchases the defendant's property at the execution sale, his title thereto will not be affected by a subsequent reversal of the judgment (Freeman on Executions, sec. 347); the chief ground therefor being that given in Manning's case, 8 Co. 96, that otherwise he would lose both his money and the land, and there would be no inducement to purchase at judicial sales. If the purchase is made by the plaintiff in the action, under the great weight of authority, his title will be defeated by a subsequent reversal of the judgment. This rule was adopted in this state in *Reynolds* v. *Harris,* 14 Cal. 667.[1] Whether the reversal of the judgment will affect the title of the grantee of the plaintiff who has thus purchased the land has been differently decided in different jurisdictions; in some by reason of statutory provisions, and in others depending upon the manner in which the question has been presented. In those jurisdictions in which it is held that the title of the plaintiff himself, who becomes the purchaser, is not affected by a reversal of the judgment, the courts necessarily hold that the title of his grantee will not be affected, and the cases cited therefrom (*Parker* v. *Anderson,* 5 T. B.

[1] 76 Am. Dec. 459.

Mon. 445, and *Bickerstaff* v. *Dellinger,* 1 Murph. (N. C.) 272) need not be considered. In Nebraska it is provided by section 508 of the Code of Civil Procedure of that state, that the reversal of a judgment "shall not defeat or affect the title of a purchaser" of land theretofore sold in satisfaction of such judgment, and in the case of *McAusland* v. *Pundt,* 1 Neb. 211,[1] cited by the respondent, the court invokes that provision in support of its decision. In some of the cases cited on behalf of the respondent the court has discussed and stated the general rules applicable to the title of property purchased under a judgment which is subsequently reversed, and the rule thus stated has been followed in those states, without any discussion of the principles upon which the rule is based, as authority in cases where the facts were widely different. For example, in *McJilton* v. *Love,* 13 Ill. 486,[2] which is referred to in subsequent cases in that state as the authority for their decision, the court says in its opinion: "The rights of third persons are not affected by the reversal." This expression was purely *obiter,* for the court held that McJilton was not a "third person," inasmuch as he had taken an assignment of the judgment and had control of the execution under which he had purchased the land. This case, however, is referred to as the authority for subsequent decisions in that state which hold that the grantee of a plaintiff who purchases at a sale under his own judgment is not affected by a reversal of the judgment.

Many of the cases cited by the respondent did not involve the rights of the purchaser at a "sale under a judgment" which was afterwards reversed, but the purchase was made where the judgment had been a direct adjudication of the plaintiff's title to the land. And in the greater number of the cases cited by him the purchase from the plaintiff was made before any step had been taken by the defendant for a reversal of the judgment, and the purchaser was protected in his purchase upon the ground that it was made on the faith of a judicial declaration that the title was in his vendor; that a defendant who permits a final judgment against him to remain of record without questioning its validity can invoke no equity in his favor for disputing the title of one

---

[1] 93 Am. Dec. 358.                    [2] 54 Am. Dec. 449.

who has purchased his property in reliance upon the correctness of that judgment. (See *Hunt* v. *Loucks*, 38 Cal. 382;[1] *Rector* v. *Fitzgerald*, 59 Fed. 808.)

*Horner* v. *Zimmerman*, 45 Ill. 14, was a case of strict foreclosure of a mortgage, and after the decree had been entered the plaintiff conveyed the land to a third person. The bill of review under which the decree was reversed was not filed until two years thereafter. In *Wadhams* v. *Gay*, 73 Ill. 415, Flagler, under whom the defendants derived their title, had obtained a decree in 1854 declaring him to be the owner in fee of the land. The bill of review under which the decree was reversed was not brought until 1866. The court held that the purchases "intermediate the time of the rendition of the decree and the suing out of the writ of error," having been made in good faith for value, in reliance upon the validity of the decree, were entitled to be protected. In *Guiteau* v. *Wisely*, 47 Ill. 433, the judgment under which the land was sold was rendered in September, 1860, and at the sale in February, 1861, the plaintiffs became the purchasers. They assigned the certificate of sale March 14, 1862; and in November, 1863, the judgment was reversed upon a writ of error sued out by the administrator of the judgment debtor. The assignees of the certificate were held to be entitled to the same protection as if they had purchased at the sale. It does not appear at what time the writ of error was sued out, but as the judgment debtor died March 7, 1862, and letters of administration upon his estate could not have been granted until some time thereafter, it is reasonable to assume that it was later than March 14th, and that the assignees took the certificate without any notice that the defendants questioned the validity of the judgment. In *McBride* v. *Longworth*, 14 Ohio St. 349,[2] the bill of review under which the decree was reversed was not filed until more than three years after the sale under the decree. Moreover, the court held in that case that Longworth, who purchased at the sale, was a "third person," and entitled to protection as such. What was decided in *Taylor* v. *Boyd*, 3 Ohio, 338,[3] is fairly expressed in the *syllabus* as follows: "A party having title to land under a decree in

[1] 99 Am. Dec. 404.    [3] 17 Am. Dec. 603.
[2] 84 Am. Dec. 383.

chancery conveys in good faith before citation on error is served, a reversal of the decree does not divest the purchaser of title." In *Macklin* v. *Allenberg,* 100 Mo. 337, the validity of the title transferred by the plaintiff, who had purchased at his own sale, was upheld on the ground that it "ought not to be defeated by a reversal of the decree on a writ of error sued out fully a year after the date of the deed." In *Mc-Cormick* v. *McClure,* 6 Blackf. 467,[1] it appears in the opinion that the land was conveyed "after the decree and before the commencement of the suit in error."

None of the foregoing cases, however, or the principles governing them, have any application to a case where the defendant has appealed from the judgment before the sheriff's deed is executed to the plaintiff, or a sale made by him to a third person. By such appeal the effect of the judgment as evidence of the matters determined by it is suspended, even though its execution is not stayed. (*Woodbury* v. *Bowman,* 13 Cal. 634; *Murray* v. *Green,* 64 Cal. 363; *In re Blythe,* 99 Cal. 472.)

As against the authorities cited by the respondent, the appellant has cited *Marks* v. *Cowles,* 61 Ala. 299, in which the facts upon which the decision was rendered were in principle identical with those presented in the present case. There, as here, the land was sold in satisfaction of a money judgment and purchased by the plaintiff in the action. After it had been sold, and before the time for a conveyance, the defendant appealed from the judgment, but did not cause its execution to be superseded. Thereafter the purchaser received a conveyance of the land, and subsequently sold and conveyed it to a third person, a stranger to the action. After this conveyance the judgment under which the property was sold was reversed. The court held that the defendant was entitled to a restitution of the land, upon the ground that the purchaser from the plaintiff was chargeable with notice of the defeasible character of the title of his grantor, saying: "The judgment or decree must be shown necessarily as an indispensable element of the title of the party on the face of the title-papers. And when it is shown, the defeasible character of the title appears, of which the vendee is bound to

---

[1] 39 Am. Dec. 441.

take notice. . . . The right of a party aggrieved by an erroneous judgment to a restoration to the condition in which he was when it was rendered—the prohibition against the use of such judgment by his adversary so as to derive advantages he cannot restore, would be of little avail if through the mechanism of an alienation to a party bound to know that the right and prohibition exists, it could be defeated,'' and that a different rule would authorize a party to transfer a better and higher title than he acquired. We are of the opinion that the principles here declared correctly state the rule governing the decision to be rendered in the present case. (See, also, Freeman on Executions, 3d ed., sec. 347; Dembitz on Land Titles, p. 1229; *Dunnington* v. *Elston,* 101 Ind. 373; *Singly* v. *Warren,* 18 Wash. 434.[1])

The suggestion that this case was thus decided for the reason that there is no statute in Alabama declaring the rights of the parties or prescribing the procedure to be followed in case of a reversal of the judgment does not impair its weight as an authority. The rights of the defendant whose property has been taken upon a judgment which is subsequently reversed do not depend upon the provision of section 957 of the Code of Civil Procedure. That section is not restrictive of his rights, but is a remedial statute, and is to be liberally construed. The appellate court could have jurisdiction over only the parties before it, and would have no authority to restore to the defendant property over which the plaintiff had ceased to have any control. In *Reynolds* v. *Harris,* 14 Cal. 667,[2] the proceedings were instituted in the district court and the action of that court was upheld, not by reason of the statute, but by virtue of the inherent power in the court to make restitution of what had been lost by reason of its erroneous judgment. (See, also, *Dater* v. *Troy Turnpike Co.,* 2 Hill, 629; *Gott* v. *Powell,* 41 Mo. 416.)

Section 1049 of the Code of Civil Procedure declares: ''An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied.'' Any alienation of the property involved in an action while it is pending is subject to the rights of the other

---

[1] 63 Am. St. Rep. 896.    [2] 76 Am. Dec. 459.

party, and will be subject to the judgment thereafter rendered in the case. (2 Pomeroy's Equity Jurisprudence, secs. 637 et seq.) It does not appear from the record herein whether a notice of *lis pendens* had been filed in the foreclosure suit, but it does appear that the plaintiff derived his title to the land through the sheriff's deed to Golinsky, executed under the judgment in that action. "The grantee is charged with notice of the deeds and documents from which he deraigns his title. When he purchases from the plaintiff in the execution he is presumed to know the course of proceedings and state of the record from which the title of his grantor proceeded, and he is presumed to know, too, that the right of the defendant is to take an appeal within the statutory period, and also the consequences of the successful prosecution of this right; and he must be supposed to purchase with reference to these things." (*Reynolds* v. *Harris,* 14 Cal. 667.[1] See, also, 4 Kent's Commentaries, 179; Story's Equity Jurisprudence, sec. 400; Washburne on Real Property, sec. 2215; 2 Pomeroy's Equity Jurisprudence, secs. 626 et seq.; *Marks* v. *Cowles,* 61 Ala. 299; *Speck* v. *Riggin,* 40 Mo. 405; *Smith* v. *Cottrall,* 94 Ind. 379.) The plaintiff was chargeable with notice at the time he purchased the land of the character of Golinsky's title, and he was therefore put upon inquiry and bound by all the facts which such inquiry would have disclosed. Upon such inquiry he would have learned that Golinsky had purchased the land at a sale under a judgment in an action in which he was the plaintiff; that before the execution of the sheriff's deed under the sale the defendants had appealed from the judgment, and that the appeal was still pending; that thereby the validity of Golinsky's title to the property was disputed by the defendants in that action, and would be defeated by a reversal of the judgment.

Neither is the plaintiff herein in a position to invoke any protection under the provisions of section 957 of the Code of Civil Procedure. By the terms of that section, as amended in 1874, the court is authorized to make restitution "so far as such restitution is consistent with protection of a purchaser . . . at a sale ordered by the judgment, or had under process issued upon the judgment." The plaintiff herein did not purchase the property "at a sale ordered by the judgment,"

---

[1] 76 Am. Dec. 459.

and the principles under which protection is given to strangers who purchase at judicial sales have no application. He did not purchase the property until after the sale had been completed by the execution of the sheriff's deed, and until after an appeal had been taken from the judgment, and he had become chargeable with notice of the defects in Golinsky's title. He is therefore not in a position to invoke any equity in his favor, or to claim any protection from the restitution which Golinsky would have been required to make.

As the effect of the reversal of the judgment was to set aside the sale to the Golinskys, the appellant herein was thereby restored to his original estate in the land. He did not require any order of restitution from the court to enable him to assert his right to this estate, and it was incumbent upon the plaintiff herein, before he could have his title quieted, to establish a title in himself superior to that of the appellant. (See *Black* v. *Vermont Marble Co.*, 137 Cal. 683.

Whether the appellant is estopped from objecting to the validity of the sale to the respondent cannot be determined upon this appeal. The record does not disclose any issue upon that proposition before the superior court (*Newhall* v. *Hatch*, 134 Cal. 269), and that court did not make any finding to that effect. Whether one is estopped by his conduct is a question of fact to be determined from the evidence in reference thereto. We cannot assume from the evidence before that court that it would have found that the appellant was so estopped, and it is not within the jurisdiction of this court to make a finding of fact from the evidence before that court.

The objection that the statement on motion for a new trial does not sufficiently specify the particulars in which the evidence is insufficient to justify the decision is overruled. It is stated therein, "The foregoing constitutes substantially all the evidence given upon the trial." (See *Standard Quicksilver Co.* v. *Habishaw*, 132 Cal. 115.)

We advise that the judgment and order denying a new trial be reversed.

Gray, C., and Chipman, C., concurred.

For the reasons stated in the foregoing opinion the judgment and order denying a new trial are reversed.

McFarland, J., Henshaw, J., Lorigan, J.

Hearing in Bank denied.